But I will not say all the names. Ignacio Sosnava Rodriguez v. Sylvester Ortega, et al., consolidated with other cases. Clause number 2650183, et al. I believe Mr. Ensign gets to go first. Thank you, Your Honors. Good afternoon. May it please the court, Drew Ensign, Deputy Assistant Attorney General for the United States. I'd like to reserve four minutes for rebuttal. The constitutional validity of detention during immigration proceedings has long been established. In 1896, for example, the Supreme Court in Longwing explained that, quote, it was clear that detention or temporary confinement as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens is valid, end quote. Even here, petitioners do not challenge the constitutionality of mandatory detention without bail for those apprehended at the border, even for those who lawfully presented themselves at ports of entry. The appointees instead claim that because they successfully made it past the border, that is, they successfully committed the crime of illegal entry, they have acquired a constitutional entitlement to bond by virtue of their unlawful entry. Petitioners' constitutional claims fail for multiple reasons. Most obviously, they are fundamentally miscast because they sound in substantive due process, not procedural due process. By making detention mandatory under Section 1225, Congress necessarily made flight risk and dangerousness irrelevant to the question of detention in individual cases. That, in turn, precludes any procedural due process argument here, because as the Supreme Court held in Connecticut DPS, quote, pointives who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant to the statutory scheme, end quote. There is no such relevance here. Well, counsel, it's interesting you start with a case dealing with the Doe versus Connecticut case, which obviously, better than I, is not an immigration case. It seems to me that the cases that you're relying on are immigration, and they're principal ones. The issue of whether somebody has actually entered, as opposed to admitted under statutory language, have they entered? Did they get 25 yards past the border or were they stopped at the border? It seems to me the court has gone out of its way. The cabin is decisions, and has left in place longer term decisions that says indefinite detention without the opportunity to challenge that raises serious due process problems. You want to respond to that? Absolutely, Your Honor. So I think there's a couple of different components of that, so let me take them in turn. As to the concern about indefinite detention, we certainly acknowledge that was on the court's mind in Zabidas. In De Moore, they specifically did distinguish detention under sections 1225 and 1226, which say pre-final order detention from post-final order detention under section 1231. Because 1231, if a country is not available for removal, detention is potentially indefinite. But as the court recognized in De Moore, detention under 1225 and 1226 is not indefinite. It's only pending removal proceedings. Those removal proceedings have a distinct end date. And so the constitutional concerns that are presented in the 1225 and 1226 context are diminished relative to that Zabidas concern about indefinite detention. But I think Zabidas is- Do you find that there is no constitutional due process that would ever become relevant in the cases before us? Not necessarily, Your Honor. I think what's not before you is a challenge to the length of detention. Those are cases that are not as intimately bound up with the removal proceedings themselves. Much like conditions of confinement, a length of detention case could be- There's a proper ruling in this case, therefore, limited in some language by the court, if we were to agree generally with you, that it cannot be indefinite. And there's some time frame, defined or otherwise, that applies? Not specifically, Your Honor, because I don't think that's presented. There's no- I'm not trying to be specific. I'm trying to be general. And then what I'm looking for, not concession in that part, but your view of whether the Constitution is, in fact, implicated, not on the facts before us, but in a longer-term detention. For a length of detention, I think that is analytically distinct. And I think it would raise different issues. And a careful answer, I would expect. I mean, certainly there are constitutional rights at play, whether or not they would lead to specific holdings that a constraint would have to be presented on particular facts. Well, we didn't get into any of this before now, because pre-2025, all of the petitioners would have been treated under 1226, correct? In other words, they would have gotten a hearing, and they would have been released if they weren't a flight risk or dangerous. Certainly for these particular petitioners, and they're sort of out of patterns. But I mean, you've got 30 years of practice in the immigration courts, as well as the federal courts, that treated all these aliens under 1226, and basically treated them as though they fell under that statute, not 1225. That's certainly correct for this subset. But I do think 1225 detention has been likely hundreds of thousands of aliens, as well, because it's undisputed that it applies to people apprehended at the border. Well, but I'm talking about past practice. And I guess what I'm grappling with is what do we do with that past practice over a variety of administrations over 30 years, since 1996, I guess. And so now there's a shift. And the process that was afforded has been taken away. So I don't think there's much relevance to be given to it. To the extent there would be, it could have been in the statutory context where prior practice could be potentially instructive on what the statute means. I think this court and Gwen Rostro explained why that didn't matter. Does it inform the substantive due process argument that is at least lurking in the petitioner's claim? I don't really think so, Your Honor. You're really only talking about 30 years of history, which is more kind of the blink of an eye in terms of substantive due process. So how much history should we talk about? Typically, substantive due process claims often go back even prior to the founding to look at what English common law is. It's not uncommon for substantive due process claims to analyze history and tradition in such long terms. But what do we do in a case like the immigration context where there's really been sort of inconsistent practices, no practices at all, that really map onto the modern immigration framework, whether that's the 1950s or forward or 1996 forward? Do you see what I'm saying? I mean, in other words, there's not really an analog back then because it just wasn't looked at the same way. Your Honor, I think DeMoor and Carlson are both instructive on that. So they're admittedly a slightly different context because it's criminal aliens, but certainly in DeMoor, that is. But certainly, the court there recognized there was a long history of using detention in immigration proceedings, and that long history defeated the substantive due process claim that was asserted there. I also think Carlson, in particular, as reiterated by the Supreme Court in DeMoor, is pretty instructive here as well, where there Carlson, let me actually just pull it because it's quite notable. I mean, there in DeMoor, they recognize that, quote, there was no individualized finding of likely future dangerousness as to any of the aliens. And at least in one of the cases, there was a specific finding of non-dangerousness. The court nonetheless concluded that the denial of bail was permissible by reference to the legislative scheme to eradicate the evils of communist activity, end quote. So there you have the Supreme Court reiterating that Congress can make broad statutory categorizations and rely on them, and that's consistent with the history and traditions of the United States, where within the immigration context, Congress is permitted to do so. Well, but in DeMoor itself, talked about a number of cases, but it doesn't mean the principle that I get from DeMoor is that you have a determination that these aliens who have been convicted of crimes are a subset who are entitled to be treated as a subset of overall aliens. So putting DeMoor and those who have been convicted of some offenses aside, you're back into more general language. And I wish some of these immigration opinions were easier to pronounce. But Zadivas, where it talks very generally about the basis of the due process clause prevents the government from depriving individuals of their liberty for extended periods of time. And obviously, you have responses about the statutory rights that are given. But it does seem to me that we are facing a widespread, frequently stated Supreme Court doctrine that due process does apply to lengthy detentions, regardless of what statutory authority you're operating under. So I guess kind of three responses, Your Honor. First, I think one petitioner's key rhetorical or argumentative moves is to suggest that DeMoor is very fact-bound. I think the way that DeMoor reiterates Carlson makes clear that it's not fact-bound, that in particular, there was no dangerousness, and there was no prior conviction in Carlson. And indeed, in one case, there was a specific finding of non-dangerousness. But nonetheless, there was that. And in particular, and then in Zadivas, as Your Honor pointed to, I think it's fair to say that DeMoor itself, in several places, is emphasizing that this is a category of criminal defendants, of criminal aliens. You can't take that out of the opinion, despite there's other language in there as well. I know you'll get into three points, and it cuts you off. But respond on your first point. Absolutely, Your Honor. I think I'll certainly acknowledge there's quite a bit of language about the specific criminal context in DeMoor. But I do think that the specific reiteration of Carlson and the way that it analyzes it is entirely consistent with their arguments here. I also think, as to Zadivas, I think it's quite instructive. Because even there, where it does recognize a fundamental liberty interest in avoiding prolonged detention, it's very interesting what they order. You can get a hearing in Zadivas on the likelihood of removal in the reasonably foreseeable future, but you never get a hearing about flight risk or dangerousness, ever. That's the case where they ended up finding that removal was basically not attainable anymore? Right. Is that also the case where they said six months post-removal order, detention was presumptively constitutional? Yes, Your Honor. When you get to six months, there's a presumption up through six months that at least the Eleventh Circuit thinks is conclusive, that detention is reasonable at least until that six months. But that just comes from the Supreme Court. Are there principles that say, well, not five months, or not seven, or does it go to nine? I mean, how do we answer Judge Southwick's question about when detention becomes intolerably too long? Well, I think you would first wait for a claim that challenges length of detention rather than the fact of detention, which is what you have here. Well, and does the six-month rule post-removal order really map onto a pre-removal order or pre-removal proceedings detention? So there is something of a raging circuit split on this issue, at least in the 1226C context, where it's up in a petition before the Supreme Court in a case called Black versus. It was originally Black versus Decker, but the name changed. So it's Black versus something. The circuits are all over the map. I think it's been called the Circuit Splat. Those tend to hold that six months can trigger in the 1226 context a potential right to a bond hearing. And so that case law exists. This court, in an unpublished decision that whose name escapes me, but is cited in our brief, seemed to reject the proposition that due process was triggered at that point. But I don't think any of that's presented here. I also think that I sort of read the petitioner's argument to analogize pre-removal proceedings detention to pre-criminal, pre-trial detention in the criminal context, where a bond hearing is routine. Yeah, certainly in the criminal context there is. But as DeMoor recognizes, Congress frequently is permitted to make rules in the immigration context that would not be constitutionally permissible in other contexts. I guess what I'm asking is, is that analogy to the pre-trial criminal context more apt to our case today, our cases today, than the post-removal order context? Or is it the reverse? It's probably more the reverse. I think Carlson makes clear that that analogy to criminal bond hearings doesn't work. Because in that case, you had an actual adjudication that someone was not dangerous at all. And yet the Supreme Court still upheld their detention simply by reference to the legislative scheme. And so certainly that would not fly in the criminal context, as a general matter, maybe for particularly serious crime. So I don't think that analogy works as well. I think Zabidas is closer. But I think Zabidas is instructive in that Zabidas permits continued detention as long as the government can show a reasonable likelihood of removal in the reasonably foreseeable future. Or sorry, significant likelihood, or so-called slur. You never get to a hearing about either flight risk or dangerousness under Zabidas, ever. And so on page 20 of their answering brief, they identify Zabidas as their central case for the liberty interest in hand. And the Supreme Court clearly did consider liberty from detention at issue in Zabidas. And the way they resolved it is quite instructive. Flight risk and dangerousness do not get you a hearing under Zabidas, ever. Well, counsel, one of the concluding sections in the majority opinion of Zabidas says, for the reasons we have set forth, we believe an alien's liberty interest is at the least strong enough to raise a serious question as to whether irrespective of whatever procedures we're talking about, criminal alien, somebody else. I've added that. The Constitution permits a serious question of whether the Constitution would permit detention without some sort of process. The cases say many things. They do, Your Honor. But also in the conclusion, I think it's quite instructive that they make clear that as long as removal is reasonably likely in the future, that detention is continued to be authorized for the foreseeable future. So here's what they say on page 701. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future, end quote. And so that's how they summarize their holding. And as long as the government meets that burden, flight risk and dangerousness are not relevant and cannot result in release from detention. All right, counsel. Thank you. Thank you, Your Honors. We're all, counsel in this case, at somewhat short deadlines on briefing. We appreciate the efforts from all sides. It's been very helpful. We're deeply appreciative of the extension, Your Honors. Rebecca Kassler for petitioners. May it please the court. I am honored to be here today.      The district courts correctly rejected the government's sweeping and novel arguments that would strip the petitioners here of any due process rights to challenge their detention. Petitioners have no criminal history. They are the fathers of US citizen children, and they have each been living in this country for over a decade. The petitioners ask for a narrow ruling regarding the application of the Matthews factors to their specific cases. The district courts correctly rejected the government's unprecedented threshold arguments that would take a due process claim off the table here. Instead, the courts applied established principles to evaluate their claims. Those principles include, one, people who have entered this country have due process rights, constitutional due process rights. That's clear from cases like Zadvaitis. I mean, and it goes back over a century. Constitutional procedural due process rights? Yes. Procedural and substantive, Your Honor. I know you're supporting substantive, as I think it's important for you to do. But I do wonder, on what basis to find procedural rights in light of the statutory failure to mention the specific procedures that would apply to these individuals. Yeah, I mean, so the Supreme Court and this court have long held that constitutional procedural due process rights attach whenever a person has affected entry. That's been the case for 100 years. As the Second Circuit held just yesterday, no one could seriously contend that the entry fiction applies to people like the petitioners in this case. That's been the case, as I said, that's been the case for over 100 years. The entry fiction? So when does the entry fiction go away? You mean, when has a person entered? No, when does it go away? I mean, in other words, when does an alien get treatment other than as an applicant for admission when they have not been admitted to the country? I think that, to the extent it applies, I mean, the Supreme Court has described this doctrine as relevant to the application for admission. So it would apply with regard to the procedures that are in place to determine whether they have a right to stay or go. But these are applicants for admission, correct? They are. And I thought the law delineated a difference between someone who has been admitted to the country, more due process, more procedural rights, constitutional rights, than someone who has not been admitted. And it doesn't matter if they make it across the border into the, quote, interior at all. They're treated as though they're at the border. What the case law says, Your Honor, is that the entry fiction applies when a person has been stopped at the threshold, the physical threshold of this country. And so Ira Irette in 1996 did not rewrite the constitutional principle there. I mean, I don't know. Well, but they rewrote the dichotomy between those who were actually apprehended and those who sort of made it past the border and said, no, we're not doing that. We're treating all these aliens equally as applicants for admission. And those applicants for admission, legally, have not entered the country, regardless of whether they end up in Indiana or within 15 feet of the border. Respectfully, Your Honor, the last part of what you just said, that they have not legally entered, Ira Irette did not do that. Ira Irette did not change the definition of entry. And in fact, it retained that concept in various sections. It carried that forward. And where the term entry is used, it has the same meaning that it always did. And so what Ira Irette did is change the substantive basis for removal that would apply to someone who has not been admitted. And it brought everybody into the same unified removal proceeding.  But don't these petitioners fall under 1225? Yes, this court has held that. And 1225 doesn't afford for a hearing. On their detention. You're right, it doesn't, Your Honor. But Congress does not have the power to change the Constitution. Well, but Congress has plenary power. The Supreme Court has said this. Under the Constitution, to legislate immigration laws and procedures, and here they have done nothing other than to say these aliens, applicants for admission, shall be detained. And when Rostro says this, explains the statutory argument, I realize you're making the constitutional argument. But to get to procedural due process, we have to basically sidestep when Rostro, in all of its analysis, and we have to superimpose on the statute something that's just simply not there. Respectfully, Your Honor, I don't think that's the case. How so? It doesn't have a hearing. There's no language about a hearing at all. Well, so going back to the plenary power, that is about the power to set substantive rules about who can come in, who can stay, and who must leave. And what procedures are required for those who are in one of those buckets? What procedures are required for people who have not effected entry is where Congress's power is, as you've described. Well, we may disagree about the reading of the statute, but you say that a hearing is required in the Fifth Amendment to assess dangerousness and flight risk. Why those factors? Why not 10 other factors? So those are the classic factors that have long been considered for pretrial detention, right? In the criminal context you're talking about? Yes. What about the immigration context? Yes, and the early immigration history here, like when deportation proceedings were first created, those pretrial release procedures were understood to apply to immigration detention as well. The early history teaches us that, and we have cited a law review article from Professor Nash that goes into it. What is the early history? Give me some years. Yeah. So I believe that the first removal, the first deportation proceedings, there were two different types. There was a type that happened in federal court. That was in, I believe, the 1880s that that was created. And alongside that, to the extent there was detention in those proceedings, federal courts routinely understood that they had an inherent power to release under the same rubric as in the pretrial context. And there was also an administrative procedure that was used. Well, there may be a power to release. In the government, you heard me ask counsel opposite. For 30 years, basically, 29, 28 and a half, the IJs, the BIA, the governments, different administrations, effectively treated these aliens as under 1226, and they were released. But because they had the power to do that, stipulated, doesn't necessarily suggest they didn't have the power otherwise to follow the statute and detain everyone. I'd like to go back to that early history, Your Honor, because the understanding from the historical record is that that power to release was understood to be required by the Constitution. So are we talking substantive due process now? Yes. I'd love to get to that, if that's all right. Well, you've led with Glucksburg. So you say it's a procedural claim, but yet it's a substantive claim, really. Yeah. Petitioners do not shy away from the fact that there is a substantive aspect to this case. This case is very similar to Fuchsia versus Louisiana, where there was civil custody that was assumed to implicate a fundamental liberty interest, the interest in freedom from restraint. And there were existing precedents that set forth what was substantively permissible in terms of the reasons for that detention. And so the Supreme Court didn't spill a lot of ink analyzing that case in a substantive framework, because precedent already set forth the basic principles that apply. And so they plugged those substantive principles into the procedural due process analysis. And they determined that the procedures in the state statute both were procedurally inadequate and they were substantively inadequate, because they didn't include what precedent required in terms of a showing of current mental illness. That was an extra statutory factor. But there was no need to re-litigate that issue, because it was clear from precedent. And the same is true here. People who have entered this country have constitutional due process rights. That includes a fundamental interest in freedom from imprisonment. And immigration detention infringes that interest. Zadvydas and many other cases tell us this. And so Jenny's- Well, how do you get past Doe? Because Doe says what procedural processes do has to be relevant to the statute. Even assuming you have a procedural right to a hearing of some sort, again, 1225 mentions nothing about flight risk and nothing about dangerousness. It mentions whether you're in the country beyond a reasonable doubt appropriately or legally. So I could see maybe some due process there for that determination. But you're not contesting that here. The government cites no case where the rule from Doe, as they characterize it, has ever been applied. Well, the district court sort of waves it off. But Doe clearly says that whatever consideration you're trying to vindicate in the hearing would need to be relevant to the statute. And here, I just don't see how it's relevant, whether there is a flight risk or not. Because again, the statute says, shall. The Doe opinion mentions that there is not only no statutory reason why the process requested there was relevant, it also says there was no constitutional reason why it was relevant. And the Scalia concurrence makes this very clear, because there he says, if a fundamental interest were implicated here, the rule from Doe would not apply. So I think that if Doe were meant to work a sea change in due process jurisprudence, we would have seen some evidence of that. It would have been applied much more broadly than it has been. It's generally restricted to a sex offender registry context. And it would allow Congress to legislate away the due process clause. D'Amour was decided one month later. And if Doe were so relevant to a claim about the validity of immigration detention, then we would have seen that in the D'Amour decision. 1226C does not say detention is only permissible if there is a flight risk or a danger. It's a categorical bail risk determination. And yet, the court found in D'Amour that it was highly relevant that the purposes of that detention were to prevent flight and danger. And that's the rubric from which they analyze the substantive validity of that statute. That was a facial claim. We do not make a facial claim here. This case is only about our three petitioners. Though you say that, how is it not a facial claim? A facial claim. You're basically saying that under any circumstance, or at least these three petitioner circumstances, 1225 is invalid. A facial claim would be a claim that there are no circumstances under which the statute could be valid. And we're not making that claim here. I mean, I think it's correct that if there were petitioners with the exact facts, as our petitioners here, we would expect the same result to occur. And I mean, that's how precedent works. Yeah, but how are you going to assess flight risk or dangerousness with regard to every other petitioner that will shortly be out there, but vice these three? In other words, it would have to be done in every case. Well, a couple points there, Your Honor. First of all, the government's arguments are just about barriers to getting to Matthews at all. And you could imagine that with different inputs in Matthews' analysis, there could be different outputs. Well, but you don't get to Matthews if what you're trying to prove as process being due is irrelevant to the statute. And it's very clear that flight risk and danger are the purposes of the statutory scheme here. So as a constitutional matter. Yes, but again, it doesn't follow if there is no flight risk or is no dangerousness regarding a petitioner, that they could not be detained under the statute. I think that is what follows, Your Honor. Well, I don't see it in the statute at all, because it says they shall be detained pending removal proceedings. Right, and the problem there is that this is a deprivation of a fundamental liberty interest. And so the Constitution swoops in to tell us what's required here. We're back to substantive due process. Sure, and as, I mean, I think this is laid out in our briefs, but the work has already been done there. The Jennings Court says very clearly with regard to this statute, the purpose of this detention is preventing against flight and danger. And Zadvydas tells us there is clearly the deprivation of a fundamental liberty interest here. Well, counsel, when you're talking about that as a rejection of Doe, it seems to me one argument could be that's a little inconsistent, perhaps, with the exact language of Doe, is to the extent the Supreme Court has identified that as the purpose of any kind of hearing under this statute, in that it may not be statutory language, but the Supreme Court identified purposes. Now, I don't know if that holds up or not, but that would be one way. I am quite concerned about the issue that my colleague has been talking to you about, insofar as statutory procedure not being set out in the statute. You are reluctant, because it's a higher heel, I suppose, to rest too strongly on substantive due process. But I want you to address that a little bit for us, because the statute has problems, I think, for you, not unsolvable problems, necessarily, but let's talk about that Constitution thing, talk about constitutional due process. All right, yes. Do you have a specific question, or do you want me to just go? I mean, I've talked to Mr. Ensign, if I understood your pronunciation, I hope so, earlier about some quotes from some of these cases that you're talking about that seems to create a, there's been a reluctance by the Supreme Court to identify a right in the government to detain an immigrant for extended periods of time, that there is a fundamental right for the government not to detain someone. Are you relying on just that sort of general language, or you have something more specific, insofar as the constitutional right here? The constitutional right is what we've stated in our brief. It is the fundamental interest to be free from a prison right. What is your best case, applying that to the immigration context, it would override some of opposing counsel's arguments. Zadvydas says this very clearly. Immigration detention implicates the fundamental right to freedom from restraint. Well, it's really talking about too long of detention, it seems to me, is what some of these cases talk about. And maybe you're here prematurely. It's not good for your clients. But nonetheless, that's a concern to me. Is there any potential constitutional violation at this stage, depending on what case law you're relying on? You know, I know the government uses Damora in their favor, but I think it really helps petitioners here. Their threshold question was, is there a right to a bond hearing at all? I mean, that case wasn't just about prolonged detention. The question was, does this detention serve a permissible civil purpose? And you only get to the idea of, even if it does, it can't be prolonged, if you first find that there is a constitutionally sufficient justification for detention in the first place. Judge Ezra stated this very clearly in his orders on appeal here. He said, you need to have a justification for deprivation of a fundamental interest from the outset. And that is fundamental to what the due process clause means. And when there is no justification for detention, it really starts to look like impermissible punishment. Which really gets to the possibility that Judge Wilson is right, that this really is a facial challenge, that every single person who is detained under this authority has the claim. Well, I don't think that's right, Your Honor, because people who have not entered, I mean, we don't need to get into exactly what their constitutional rights may or may not be, because that's not this case. And the statute clearly applies to people who have not affected entry, as well as people like the petitioners who have been here for years. So for that reason alone, this is not a facial challenge. But also, the Matthews factors are going to weigh differently. But again, where's the line on that? Because how many years does someone have to be here before they somehow escape the entry fiction? Determining whether a person has entered is a familiar judicial exercise. How many years do they have to be here before they have the enhanced rights you're advocating for? Five? It's not a time test, Your Honor. The question is whether they were stopped at the threshold. OK, so one month. Yes. All right. That is what the case law says about entry. What are the substantial ties that give rise to the enhanced protections? So the entry argument here is a threshold argument. Matthews deals with the facts specific to the cases of each petitioner, and those are going to look different. So the nature of the interest, the scope of the deprivation, it's going to be very different. So you'll have district courts, federal courts across the circuit, splitting hairs between who has the youngest kids, who's been married longest, who's got substantial ties with their workplace. All these considerations will go into, I guess, the first Matthews factor. They're also relevant to the bond hearing itself. I mean, because the nature of someone's ties feed into the question of whether they're a flight risk. And I mean, that's a, I mean, we're just making this up out of whole cloth is basically what you're saying. In terms of the time limit, what you, I guess, are saying is as soon as they get past the border, they have entered. Therefore, we get into all these analyses. All I'm saying, Your Honor, is that the argument here that the government has raised, that the entry fiction applies to these petitioners, is wrong. I'm trying to get to what you're arguing, and it seems quite capacious. Because what you just told me is it really doesn't matter if it's years, if it's months, if it's days. As long as they've entered, they have a right to these hearings, and they're going to be somewhat freewheeling to try to figure out what the first factor of Matthews is, how fundamental the liberty interest is. I mean, I'm seeing all sorts of sliding scales and other things to weigh in factors. I mean, please help me here, because it seems completely non-administrable and detached from the statute. Or it seems completely individualized, which is maybe what it ought to be. I think that is what the due process clause calls for, Your Honors. So I mean, again, this court need not say anything about the rights of a person who has ties that are different than the petitioners here. I don't think there can be any doubt that these petitioners have not only effective entry, but have very substantial ties to this country. And, hmm. So is it very substantial ties, or just substantial ties? You know, the government, I hear what you're saying.  You can continue. Yeah, yeah. I mean, the government didn't challenge the application of the Matthews factors below. They've raised an argument about that. Well, they say you never get there. Sure. Other than that. But they never said, OK, if petitioners are right about the constitutional violation here, then this is how the Matthews factors should weigh out. They never made any argument about that until their reply brief filed two days ago. So I think this court could issue a decision that rejects their threshold arguments about the territorial application of the due process clause, which is consistent with the framers' conception of due process. It is territorially applicable. And you don't need to get into the question of whether every single person who has entered is entitled to a bond hearing, because the government never challenged that remedy at all. Gus, something else for us? Yeah. Let's see here. You can look at your time on how much you can add to us. This court should affirm. Thank you very much. OK. Thank you. Thank you, Your Honors. Six quick points, if I might. First on the entry fiction, they're limiting it in a way that it's reduced to essentially nothing and flouts the case law. The entry fiction is so-called because it treats people as if they're at the border, even though they're not. So limiting the entry fiction to only people that's at the border means that it does no work whatsoever. Where's the case that tells me most comprehensively when the entry fiction applies and when it doesn't? Kaplan v. Todd is particularly instructive. There, the alien in issue had been in the United States for nine years. And it was in the interior, had been lawfully paroled into the United States. And they still applied the entry fiction. Their asygium is also quite good. It reiterates that the entry fiction can apply to people who have been here for years. Counsel, isn't the fiction, though, basically we have a case with 25 yards within the border isn't good enough at all is at the border. And then you have being paroled. But on those categories, it's not a broader list. And so parole is, whatever the reason is that that's considered non-entry, other than just not keeping people at the border indefinitely as other things are being worked out, it seems to me that none of that would bleed into what we're talking about in this case, people who have been, who did evade the border, who were not paroled in, who were not stopped at the border. And so it seems to me they have entered under at least traditional law. And it's a fiction. But I think the only big fictional part is the parole part. I think 25 yards inside the border is close enough not to call it a fiction. Is that the whole list of things that are encompassed within the fiction? I don't believe so. That's not how the court has analyzed it. In their asygium in Landon, they both make clear that legal admission is the dividing line. In Landon, they said that only once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly, end quote. And that's 459 US at 32. That's the dividing line that Supreme Court has drawn. And there's also no reason to believe that people who illegally enter the country, thereby committing a crime, should fare better than those who are lawfully paroled into the United States. Second, I think there's simply no careful description of the right here. It's not simply liberty from detention. It's liberty in a country that you have no right to be in whatsoever. You Knows makes clear that the where matters. You may have a fundamental right to marry and live with your spouse. But if your spouse can't lawfully be in the United States, it's not the liberty interest at issue. Third, the right here in Zavidos is the same. It led to no right to a hearing on either flight risk or dangerousness. I heard a lot of suggestion that Doe was limited to the sex offender context. But I think the Supreme Court's decisions in both Munoz and Flores make clear that that principle applies, that when you're trying, and it's also just a matter of pure logic. If you're trying to challenge Congress's substantive policy decision under the due process clause, you are necessarily making a substantive due process argument. If you want to override substantive policy, you have to bring a substantive claim. I also think this is clearly a facial claim. It does not depend in any particular facts, nor do they advance arguments about that. They simply say that anyone makes it past the border, it is entitled to a bond hearing. That is a facial claim. It does not depend on any particular circumstances. And it would have to satisfy the test of that. Finally, on length of detention, we're certainly happy for this court to reserve that issue. I don't think it's presented here. I'll say two quick things about that. I think both of the petitioners here have all been held for no more than three months, so I think that that's really not presented. Also, within the BIA, people that are detained, they're given priority, and those cases are expedited as compared to the non-detained docket. So the length of detention, or the length of proceedings, is necessarily shorter because of detention, thereby somewhat alleviating the concerns about that. Is that a policy decision you're telling us about, or is that in some regulation or statute? I believe it's a policy decision. I'm not sure if it's written down somewhere. It's certainly, I believe, a longstanding policy of the BIA. Anything else? I know your time's up, but. If I can just finally thank this court for hearing this case in such an expeditious manner, we certainly appreciate it. If we can ask this court's further indulgence, we would certainly appreciate, to the extent possible, an expedited decision. There are tons of these cases in the lower courts in this circuit. And I'm sure the district courts and the practitioners in this circuit would greatly appreciate it. Well, you said you appreciated the expedited schedule. That may be what opposing counsel said, too. I don't know if you're appreciating that late at night as you were writing briefs. But thank you for all your assistance to this court, to both of them. Thank you, Your Honor. We have a case under our advisement. Call the next case of the afternoon.